# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LHF Productions, Inc., | 2:16-cv-01918-JAD-NJK |
| Plaintiff | Order Adopting in Part and Report and Recommendation; Granting in Part and Denying in Part Motion for Default Judgment; and Closing Case |
| v. | |
| Derrick Boughton, et al., | [ECF Nos. 47, 55] |
| Defendants | |

This is one of several essentially identical cases filed by plaintiff LHF Productions, Inc., in which LHF sues many unidentified Doe defendants—under a single filing fee—for separately infringing its copyright in the film "London Has Fallen" by using BitTorrent software. LHF's practice in these cases is to move for expedited discovery to identify the defendants, and then systematically dismiss the defendants after failing to serve them or settling with them.[1] Magistrate Judge Nancy Koppe recommends that I sever and dismiss all claims against all defendants other than defendant Derrick Boughton for improper joinder and in the interests of judicial economy and case management.[2] LHF objects to the recommendation, arguing that the defendants were properly joined under Federal Rule of Civil Procedure 20(a)(2), and that mass joinder—"swarm joinder" as it is called in the BitTorrent-defendant context—better serves the economic and efficiency interests of the parties and the court.[3] After a full review of the report and recommendation,

---

[1] See *LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK; *LHF Productions, Inc. v. Buenafe*, 2:16-cv-01804-JAD-NJK; *LHF Productions, Inc. v. Smith*, 2:16-cv-01803-JAD-NJK; *LHF Productions, Inc. v. Wilson*, 2:16-cv-02368-JAD-NJK.

[2] ECF No. 47.

[3] I find these matters suitable for disposition without oral argument. L.R. 78-1.

and LHF's objection and exhibits, and an exhaustive review of the case law, I agree with the magistrate judge's recommendation and overrule LHF's objection.[4]

LHF also moves for default judgment against the remaining defendants, requesting $15,000 in statutory damages, $7,550 in attorney's fees and costs, and a permanent injunction against each defendant. I deny the motion as moot in part because I sever and dismiss all but one of the defendants from this case, but I grant the motion against un-severed defendant Boughton.

## Background

These copyright-infringement swarm-joinder cases against users of BitTorrent software have significantly increased in popularity nationwide in the past five years with some plaintiffs filing against thousands of defendants in a single action,[5] other plaintiffs filing against defendants in groups of roughly 10–100[6], and at least one plaintiff filing over one thousand cases against individual defendants.[7] The defendants are discovered and targeted by their internet provider (IP) addresses, which register on the BitTorrent tracker when they download the plaintiff's film. *Safety Point Products, LLC v. Does* describes the BitTorrent protocol well:

---

[4] I do not, however, share the magistrate judge's characterization of the state of the law, and I do not decide whether swarm joinder satisfies Rule 20(a)(2). So, although I do not adopt those portions of the report, I agree with—and adopt—its ultimate recommendation.

[5] *See, e.g., Nu Image, Inc. v. Does 1–3,932*, 2012 WL 1890854 (M.D. Fl. May 10, 2012); *Entertainment v. Does 1–1,427*, 2012 WL 12897376 (E.D. Tex. Mar. 16, 2012).

[6] *See, e.g., Combat Zone Corp. v. Does 1–192*, 2012 WL 12897164 (S.D. Tex. Oct. 12, 2012); *Sunlust Pictures, LLC v. Does 1–75*, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012); *Patrick Collins, Inc. v. John Does 1–54*, 2012 WL 911432 (D. Ariz. Mar. 19, 2012).

[7] *See Malibu Media, LLC v. Doe*, 2013 WL 6579338, at *4 n.4 and corresponding text (E.D. Wis. Dec. 12, 2013).

BitTorrent is a program that enables users to share files via the internet. Unlike other "peer-to-peer" (P2P) file sharing networks that transfer files between users or between a user and a central computer server, BitTorrent allows for decentralized file sharing between individual users who exchange small segments of a file between one another until the entire file has been downloaded by each user. Each user that either uploads or downloads a file segment is known as a "peer." Peers that have the entire file are known as "seeds." Other peers, known as "leeches" can simultaneously download and upload the pieces of the shared file until they have downloaded the entire file to become seeds.

Groups of peers that download and upload the same file during a given period are known as a "swarm," with each peer being identified by a unique series of alphanumeric characters known as "hashtag" that is attached to each piece of the file. The swarm's members are relatively anonymous, as each participant is identifiable only by her Internet Provider (IP) address. Overseeing and coordinating the entire process is a computer or server known as a "tracker" that maintains a record of which peers in a swarm have which files at a given time. In order to increase the likelihood of a successful download, any portion of the file downloaded by a peer is available to subsequent peers in the swarm so long as the peer remains online.

But BitTorrent is not one large monolith. BitTorrent is a computer protocol, used by various software programs known as "clients" to engage in electronic file-sharing. Clients are software programs that connect peers to one another and distributes data among the peers. But a peer's involvement in a swarm does not end with a successful download. Instead, the BitTorrent client distributes data until the peer manually disconnects from the swarm. It is only then that a given peer no longer participates in a given BitTorrent swarm.[8]

LHF alleges that its film has been pirated by BitTorrent users 79,404,331 times worldwide, 16,799,795 times in the United States, and 113,962 times in Nevada.[9] Of those 113,962 alleged infringers, LHF identified the 1–2% most

---

[8] *Safety Point Products, LLC v. Does*, 2013 WL 1367078, at *1 (N.D. Ohio Apr. 4, 2013) (internal citations omitted).

[9] ECF No. 51-1 at 8.

egregious offenders and filed suit against them in sets of 10–30 Does per case.[10]
Once those 10–30 Does in each case are identified, LHF somehow narrows them
down even further to 10 or fewer, and then, allegedly, to the extent that any
defendant raises a distinct defense or cause of action, that defendant would be
severed into a separate cause of action.[11] LHF claims that this process "is designed
to impose the least expense on all parties involved—including the Court."[12] LHF
brought this particular case against 18 initially unidentified defendants. After
learning their identities, LHF amended its complaint against 11 named defendants,
and then LHF proceeded to dismiss them from the case.[13] Only five defendants now
remain: Derrick Boughton, Jose Gallego, Tom Gyarfas, Daniell Templeton, and
Kristina Walsh.

Discussion

A.    Standard of review

      When a party objects to a magistrate judge's findings and recommendations,
a district court judge must "make a de novo determination of those portions of the
report or specified proposed findings or recommendations to which objection is
made."[14] The district court judge "may accept, reject, or modify in whole or in part,
the findings or recommendations made by the magistrate."[15]

---

[10] *Id.* at 9.

[11] *Id.*

[12] *Id.*

[13] *See generally* docket report case 2:16-cv-01918-JAD-NJK.

[14] *U.S. v. Reyna-Tapia*, 328 F.3D 1114, 1119 (9th Cir. 2003) (quoting 28 U.S.C. §
636(b)(1)(C) and also citing to Fed. R. Civ. P. 72).

[15] *Id.*

4

## B.     The swarm-joinder split of authority

Joining multiple John/Jane Doe participants in a BitTorrent swarm into a single action is commonly referred to as "swarm joinder."[16] Because the defendants are initially unidentified, the plaintiff files an ex parte motion for expedited discovery to subpoena internet service providers (ISPs) for the names and addresses of defendants associated with specified IP addresses. The motion raises two issues: (1) whether the defendants are properly joined; and (2) whether the court should permit the expedited discovery.[17] "Courts have dealt with the issue in several ways: denying the discovery requests, severing all but the first Doe defendants, delaying the severance decision until after the Does have been identified, or approving both joinder and pre-service discovery."[18]

The procedural posture of this case tracks the delay-severance-decision option. Magistrate Judge Koppe granted LHF's expedited discovery requests,[19] and then she ordered LHF to show cause why the identified defendants shouldn't be

---

[16] *See, e.g., Glacier Films (USA), Inc. v. Turchin*, 2016 WL 4251581, at *1 n.1 (D. Or. Aug. 10, 2016); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at *12 (N.D. Ill. Mar. 7, 2013); *Patrick Collins, Inc. v. John Does 1 through 34*, 2013 WL 593445, at *2 (S.D. Cal. Feb. 13, 2013).

[17] *See Riding Films, Inc. v. John Does I–CCL*, 2013 2152552, at *1 (D. Ariz. May 16, 2013).

[18] *Id.; see also Pac. Century Int'l, Ltd. v. Does 1–101*, 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011) (denying request to issue subpoenas); *SBO Pictures, Inc. v. Does 1–3036*, 2011 WL 6002620, at *3–4 (N.D. Cal. Nov. 30, 2011) (severing all but the first Doe defendant and allowing discovery for him alone); *AF Holdings, LLC v. Does 1–97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (denying discovery request and declining to sever); *Camelot Dist. Grp. v. Does 1–1210*, 2011 WL 4455249 (E.D. Cal. Sept. 23, 2011) (allowing discovery and delaying the question of severance); *Openmind Solutions, Inc. v. Does 1–39*, 2011 WL 4715200, at *5–8 (N.D. Cal. Oct. 7, 2011) (approving both joinder and pre-service discovery).

[19] ECF No. 6.

severed from the first defendant and dismissed in each of its cases.[20] Judge Koppe, after conducting her own extensive research on swarm joinder, ultimately recommended that I sever and dismiss from this case the claims against all defendants except defendant Boughton.[21] LHF objected to that recommendation, so I now determine whether the defendants were properly joined and whether severance is appropriate.

There is a major split of authority on this issue. Only one circuit court—the D.C. Circuit—has ruled on the issue, finding that swarm joinder does not satisfy FRCP 20(a)(2) because the defendants' use of the same BitTorrent protocol to download the same file does not arise out of the same transaction or occurrence.[22] The district courts in every other circuit and even the judges within some districts widely disagree on whether to permit swarm joinder. Some courts hold that swarm joinder is appropriate under FRCP 20(a)(2).[23] Other courts hold as the D.C. Circuit does.[24] And still others exercise their discretion to manage their dockets and sever the defendants even if swarm joinder would technically be permissible under the FRCP because other factors outweigh the benefits conferred by joinder: judicial economy, the high burden on the defendants, the risk of inappropriate settlement

---

[20] ECF No. 28.

[21] ECF No. 47.

[22] *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 998 (D.C. Cir. 2014).

[23] *See, e.g., Elf-Man, LLC v. Does 1-29*, 2013 WL 3709235, at *2 (E.D. Wash. July 12, 2013); *Patrick Collins, Inc. v. Does*, 2012 WL 12870254, at *4–5 (N.D. Fl. Oct. 16, 2012).

[24] *See, e.g., Night of the Templar, LLC v. Does 1–116*, 2013 WL 4504368, at *3 (E.D. Mo. Aug. 23, 2013); *Riding Films, Inc. v. John Does I–CCL*, 2013 WL 2152552, at *3 (D. Ariz. May 16, 2013); *West Coast Prods. v. Swarm Sharing Hash Files*, 2012 WL 3560809, at *4 (W.D. La. Aug. 17, 2012).

leverage, and filing-fee evasion.[25]  The Ninth Circuit has not yet decided the issue, so I am not bound by any authority.

My exhaustive research on the issue uncovered no clear majority rule.  The D.C. Circuit is the only circuit court to have addressed the issue (it doesn't allow swarm joinder),[26] 5 districts permit swarm joinder under Rule 20(a)(2),[27] 12 districts

[25] *See, e.g., Breaking Glass Pictures v. Swarm Sharing Hash File SHA1: £973F491D02C1E0220DBC534D8F8EDC15FC53FAEF*, 2013 WL 2407226, at *3 (D. Mass. May 1, 2013) (declining to decide whether swarm joinder satisfies Rule 20(a)(2) because joinder: (1) does not promote judicial efficiency considering each defendant may raise a unique defense or claim; (2) would be a logistical nightmare because "each defendant would be required to serve any motion or other submission on" every other defendant and all defendants "would have a right to be present at any deposition or court proceeding"; and (3) would defeat the purposes of the filing fee as a revenue raising measure and a barrier to meritless lawsuits); *Third Degree Films, Inc. v. Does 1–178*, 2012 WL 12925674, at *5 (N.D. Cal. Dec. 6, 2012) (holding that swarm joinder technically satisfies Rule 20(a)(2) but severing anyway because of the risk of inappropriate settlement leverage).

[26] *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990 (D.C. Cir. 2014).

[27] *K-Beech, Inc. v. Doe 37*, 2012 WL 12910991 (E.D.N.C. June 12, 2012); *Combat Zone Corp. v. John/Jane Does 1–5*, 2012 WL 5289736 (N.D. Tex. Oct. 26, 2012); *Elf-Man, LLC v. Does 1–29*, 2013 WL 3709235 (E.D. Wash. July 12, 2013); *LHF Productions, Inc. v. Farwell*, 2016 WL 6948394 (W.D. Wash. Nov. 28, 2016); *Patrick Collins, Inc. v. Does*, 2012 WL 12870254 (N.D. Fl. Oct. 16, 2012).

do not,[28] 18 districts have judges on both sides of the debate,[29] and the remaining 58

[28] *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990 (D.C. Cir. 2014); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y. 2012); *Odin's Eye Entertainment v. Does 1–66*, 2013 WL 5890408 (D. Del. Oct. 31, 2013); *Malibu Media, LLC v. John Does 1–23*, 878 F. Supp. 2d 628 (E.D. Va. 2012); *West Coast Prods. v. Swarm Sharing Hash Files*, 2012 WL 3560809 (W.D. La. Aug. 17, 2012); *Malibu Media, LLC v. John Does 1–31*, 297 F.R.D. 323 (W.D. Mich. 2012); *reFX Audio Software Inc. v. Does 1–97*, 2013 WL 3766571 (E.D. Mo. July 16, 2013); *Third Degree Films, Inc. v. Does 1–131*, 280 F.R.D. 493 (D. Ariz. 2012); *Patrick Collins, Inc. v. Does*, 2012 WL 12893290 (C.D. Cal. Dec. 14, 2012); *Cobbler Nevada, LLC v. Cerritos*, 2016 WL 7177527 (D. Or. Dec. 9, 2016); *Raw Films, Inc. v. Does 1–32*, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011); *Voltage Pictures, LLC v. Does 1–31*, 291 F.R.D. 690 (S.D. Ga. 2013).

[29] *Compare Digital Sin, Inc. v. Does 1–45*, 2013 WL 1289263 (D. Mass. Mar. 28, 2013) (not allowing swarm joinder) *with Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444 (D. Mass. 2011) (allowing swarm joinder); *compare Next Phase Distribution, Inc. v. John Does 1–27*, 284 F.R.D. 165 (S.D.N.Y. 2012) (not allowing) *with Digital Sin, Inc. v. Does 1–27*, 2012 WL 2036035 (S.D.N.Y. June 6, 2012) (allowing); *compare Malibu Media, LLC v. John Does 1–18*, 2014 WL 229295 (D. N.J. Jan. 21, 2014) (not allowing) *with Malibu Media, LLC v. John Does 1–11*, 2013 WL 1504927 (D. N.J. Apr. 11, 2013) (allowing); *compare Patrick Collins, Inc. v. Does 1–30*, 2013 WL 1157840 (E.D. Pa. Mar. 21, 2013) (not allowing) *with Patrick Collins, Inc. v. John Does 1–11*, 2013 WL 395497 (E.D. Pa. Jan. 31, 2013) (allowing); *compare K-Beech, Inc. v. John Does 1–41*, 2012 WL 773683 (S.D. Tex. Mar. 8, 2012) (not allowing) *with Combat Zone Corp. v. Does 1–192*, 2012 WL 12897164 (S.D. Tex. Oct. 12, 2012) (allowing); *compare Third Degree Films, Inc. v. John Does 1–72*, 2013 WL 1164024 (E.D. Mich. Mar. 18, 2013) (not allowing) *with Third Degree Films v. Does 1–36*, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (allowing); *compare Killer Joe Nevada, LLC v. Does 1–12*, 2013 WL 3458197 (N.D. Ohio July 9, 2013) (not allowing) *with Voltage Pictures, LLC v. Does 1–43*, 2013 WL 1874862 (N.D. Ohio May 3, 2013) (allowing); *compare Dragon Quest Prods. v. Does 1–100*, 2013 WL 4811735 (E.D. Tenn. Sept. 9, 2013) (not allowing) *with Sojo Prods. v. Does 1–67*, 2013 WL 1759561 (E.D. Tenn. Apr. 24, 2013) (allowing); *compare In re BitTorrent Copyright Infringement Cases*, 2013 WL 501443 (C.D. Ill. Feb. 11, 2013) (not allowing) *with Patrick Collins, Inc. v. John Does 1–9*, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) (allowing); *compare Malibu Media, LLC v. Reynolds*, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013) (not allowing) *with First Time Videos, LLC v. Does 1–76*, 276 F.R.D. 254 (N.D. Ill. 2011) (allowing); *compare TCYK, LLC v. Does 1–19*, 2013 WL 6578787 (N.D. Ind. Dec. 13, 2013) (not allowing) *with Malibu Media, LLC v. John Does 1–14*, 287 F.R.D. 513 (N.D. Ind. 2012) (allowing); *compare Malibu

8

districts have not addressed the issue. Within the Ninth Circuit alone, the District of Arizona,[30] the Central District of California, and the District of Oregon do not allow swarm joinder. The Eastern and Western Districts of Washington both permit swarm joinder under Rule 20. The Eastern, Northern, and Southern Districts of California have judges on both sides of the fence. And the Districts of Alaska, Hawaii,[31] Idaho, Montana, and Nevada have not yet addressed the issue.

*Media, LLC v. John Does 1–7*, 2012 WL 6194352 (E.D. Cal. Dec. 12, 2012) (not allowing) *with New Sensations, Inc. v. Does 1–306*, 2012 WL 5031651 (E.D. Cal. Oct. 17, 2012) (allowing); *compare Third Degree Films, Inc. v. Does 1–178*, 2012 WL 12925674 (N.D. Cal. Dec. 6, 2012) (not allowing) *with Braun v. Primary Distributor Doe Number 1*, 2013 WL 12142998 (N.D. Cal. Jan. 11, 2013) (allowing); *compare Third Degree Films, Inc. v. John Does 1–4*, 2013 WL 3762625 (S.D. Cal. July 16, 2013) (not allowing) *with Liberty Media Holdings, LLC v. Does 1–62*, 2012 WL 628309 (S.D. Cal. Feb. 24, 2012) (allowing); *compare PHE, Inc. v. Does 1–105*, 2013 WL 66506 (D. Colo. Jan. 4, 2013) (not allowing) *with Patrick Collins, Inc. v. John Does 1–15*, 2012 WL 415436 (D. Colo. Feb. 8, 2012) (allowing); *compare Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339 (M.D. Fl. 2013) (not allowing) *with Nu Image, Inc. v. Does 1–3,932*, 2012 WL 1890854 (M.D. Fl. May 10, 2012) (allowing); *compare Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fl. 2011) (not allowing) *with AF Holdings, LLC v. Does 1–162*, 2012 WL 12845359 (S.D. Fl. Jan. 12, 2012) (allowing).

[30] LHF argues that Arizona has abandoned its position and now openly allows swarm joinder and consolidates cases involving defendants from the same swarm. LHF supports that position with 86 pages of docket reports—no orders or legal analysis—showing that expedited-discovery motions were granted in every case without severing the defendants. These reports are not persuasive because they do not tell me that Arizona permits swarm joinder under Rule 20(a)(2) and in the interests of judicial efficiency. I am especially unpersuaded because expedited discovery was granted earlier in this case without severing any defendants, and I now find that swarm joinder is improper.

[31] LHF argues that Hawaii has addressed the issue and permits swarm joinder. LHF supports that argument with an order granting expedited discovery from a magistrate judge that does not discuss the joinder issue at all. The order analyzes only the standard for permitting early discovery to identify defendants. This does not mean that the District of Hawaii addressed the swarm-joinder issue and permitted it. It merely means that the magistrate judge did not exercise his

9

The only thing that is firmly established about this issue is that there is no uniform protocol.

I do not decide today whether the defendants' actions were part of the same transaction or occurrence to satisfy Rule 20(a)(2). Even if Rule 20(a)(2) were satisfied, I would still exercise my discretion under Rule 21[32] and sever all defendants except the first one, Derrick Boughton, because joining them causes more harm than good.[33]

I find most persuasive Magistrate Judge Sorokin's analysis on the issue and his conclusion that swarm joinder is not likely to promote judicial efficiency.[34] As Judge Sorokin opined, "the claims against each defendant are likely to turn on individual defenses (e.g., 'my wireless internet service is not password protected,' 'I didn't watch it, my adolescent child did,' or 'that is not my IP address'), and each will require a separate 'mini-trial.'"[35] "Joinder would transform an otherwise straightforward case into a logistical nightmare. For example, each defendant would be required to serve any motion or other submission on the . . . other defendants, and all . . . defendants would have a right to be present at any

_____

discretion sua sponte to analyze whether joinder was proper and recommend his finding to a district judge. At best, he temporarily acquiesced in the swarm-joinder.

[32] Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

[33] Fed. R. Civ. P. 20(b) ("The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.").

[34] *Breaking Glass Pictures*, 2013 WL 2407226 at *3.

[35] *Id.*

10

deposition or court proceeding."[36]  "If consolidation of certain pretrial proceedings were deemed appropriate, it could be accomplished via Rule 42(a), after the institution of individual actions against each defendant."[37]  Finally, severance prevents inappropriate settlement leverage and filing-fee evasion.[38]

LHF argues that the defendants would benefit from swarm joinder because they could pool their resources and share in one another's defenses, representation, and other strategies, and if any defendant had a unique defense then LHF would move to sever that defendant into a separate case.  I find that those benefits to the defendants do not outweigh the potential burdens imposed on them considering the varied and extensive motion practice that is typical of contemporary litigation, the scheduling conflicts that would inevitably arise when deposing each party, and the likelihood of confusing the issues and parties should the action proceed to trial.

LHF also argues that prohibiting swarm joinder would make copyright enforcement too costly and allow BitTorrent users to continue their infringing activities undeterred and cause "substantial damage to the entertainment industry and our economy as a whole.  It would essentially serve as an abdication of judicial authority from the Court—a move that would compromise the rule of law and fly in the face of two centuries of jurisprudence."[39]  I don't share this apocalyptic prophecy, and LHF's own objection belies its position.

LHF mentions that prohibiting swarm joinder would "likely increase the final

---

[36] *Id.*

[37] *Id.*

[38] *See id.* (filing-fee evasion); *Third Degree Films*, 2012 WL 12925674, at *5 (inappropriate settlement leverage).

[39] ECF No. 51-1 at 8.

1  dollar amount of judgment awards entered against individual [d]efendants."[40]
2  Those "likely" higher judgment awards would surely offset LHF's concern that
3  individual cases would be too costly to file. The copyright-enforcement business
4  model that LHF and many other plaintiffs in these swarm-joinder cases follow[41]
5  imposes a greater burden on the courts and defendants than the burden imposed on
6  the plaintiff by severance. Courts have held that cost effectiveness is not sufficient
7  to justify swarm joinder.[42] To borrow the sentiment expressed by the court in *On*
8  *The Cheap, LLC v. Does 1–5011*, I do "not condone copyright infringement and [I
9  do] encourage[] settlement of genuine disputes. However, [LHF]'s desire to enforce
10 its copyright in what it asserts is a cost-effective manner does not justify perverting
11 the joinder rules to first create . . . management and logistical problems . . . and
12 then offer to settle with Doe defendants so that they can avoid digging themselves
13 out of the morass [that LHF] is creating."[43] So I adopt Judge Koppe's
14 recommendation to sever and dismiss all defendants except for Derrick Boughton
15 from this case without prejudice to LHF's ability to refile separate lawsuits against
16 them.

17 **C.    Motion for default judgment**

---

[40] *Id.*

[41] *See Malibu Media, LLC v. John Does 1 through 10*, 2012 WL 5382304 (C.D. Cal. June 27, 2012) ("These lawsuits run a common theme: plaintiff owns a copyright to a . . . movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.").

[42] *On the Cheap, LLC v. Does 1–5011*, 280 F.R.D. 500, 505 (N.D. Cal. 2011).

[43] *Id.*

12

LHF also moves for default judgment against defendants Boughton, Gallego, Gyarfas, Templeton, and Walsh. Because I sever and dismiss the claims against Gallego, Gyarfas, Templeton, and Walsh from this action for improper joinder, the motion is moot against them, and I deny it. I now address the motion as it pertains to defendant Boughton.

### 1. Background

After identifying Boughton, LHF sent a demand letter informing Boughton of this case and his potential liability.[44] Boughton did not respond, so LHF sent him a second demand letter approximately three weeks later.[45] LHF filed its first-amended complaint three weeks after that and sent Boughton a third demand letter.[46] Despite adequate service of process, Boughton did not respond to the first-amended complaint or demand letter.[47] The Clerk of Court entered default against Boughton on May 8, 2017.[48] LHF now moves for default judgment, requesting $15,000 in statutory damages, $6,570 in attorney's fees and costs, and a permanent injunction to prohibit Boughton from further infringing its copyright directly or indirectly.[49]

### 2. Default-judgment standard

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true,

---

[44] ECF No. 41 at 4.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] ECF No. 31.

[49] ECF No. 41.

except those relating to damages.[50] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[51] The court has the power to require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[52] Whether to grant a motion for default judgment lies within my discretion,[53] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[54]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[55]

### 3. Evaluating the *Eitel* factors

#### a. Possibility of prejudice to LHF

The first *Eitel* factor weighs in favor of granting default judgment against Boughton. LHF sent Boughton numerous demand letters and a summons along with the first-amended complaint, but Boughton never responded. LHF claims that Boughton infringed its copyright by downloading its film using BitTorrent software.

---

[50] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[51] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[52] *See* Fed. R. Civ. P. 55(b)(2).

[53] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[54] *Eitel*, 782 F.2d at 1471–72.

[55] *Id.* at 1472.

14

Given the nature of BitTorrent software, Boughton may be exacerbating LHF's injury by seeding the file to the BitTorrent swarm.

          *b.*    *Substantive merits and sufficiency of the claims*

The second and third *Eitel* factors require LHF to demonstrate that it has stated a claim on which it may recover.[56] The first-amended complaint sufficiently pleads LHF's direct-copyright-infringement, contributory-copyright-infringement, and vicarious-liability claims.

To present a prima facie case of direct infringement, LHF must show that: (1) it owns the allegedly infringed material, and (2) the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.[57] LHF alleges that it is the owner of the copyright registration for the film "London Has Fallen."[58] LHF also alleges that Boughton willfully violated several exclusive rights granted by 17 U.S.C. § 106, and that those violations caused it to suffer damages.[59]

The contributory-copyright-infringement claim requires LHF to allege that Boughton "had knowledge of the infringing activity" and "induce[d], cause[d,] or materially contribute[d] to the infringing conduct of another."[60] "Put differently, liability exists if the defendant engages in personal conduct that encourages or assists the infringement."[61] Given the nature of BitTorrent technology, BitTorrent-

---

[56] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

[57] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

[58] ECF No. 8 at 11, ¶ 46; *see also* ECF No. 8-2.

[59] ECF No. 8 at 11–12.

[60] *A&M Records*, 239 F.3d at 1019 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971) and citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)).

[61] *Id.* (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

swarm participants who download files compulsorily upload those same files so that other participants may download them at a faster rate. Accordingly, LHF's allegation that each defendant is a contributory copyright infringer *because* they participated in a BitTorrent swarm[62] is sufficient to satisfy the induced-caused-or-contributed requirement. LHF satisfies the remaining requirements by alleging that each defendant knew or should have known that other BitTorrent-swarm participants were directly infringing on LHF's copyright by downloading the files that they each uploaded.[63]

LHF also claims that each defendant, as the account holder for the Internet service, is vicariously liable for any infringing activity conducted by other users on its Internet connection.[64] "Vicarious infringement is a concept related to, but distinct from, contributory infringement."[65] "To state a claim for vicarious copyright infringement, [LHF] must allege that [Boughton] had (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."[66]

LHF's allegations satisfy the first prong of the vicarious-infringement test. As the court discussed in *Dallas Buyers Club, LLC v. Doughty*, "the Internet service account holder, appea[rs] to have had exclusive control over use of the Internet service" and the account holder "could have simply secured access to the Internet by creating a password or by changing an already existing password."[67] "Thus, . . . [the

---

[62] ECF No. 8 at 13, ¶ 56.

[63] *Id.* at 13, ¶¶ 58–61.

[64] *Id.* at 14.

[65] *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

[66] *Id.*

[67] *Dallas Buyers Club, LLC v. Doughty*, 2016 WL 1690090 (D. Or. Apr. 27, 2016).

account holder] had the capacity to terminate use of his Internet service by any infringing third party if he believed it was being used to violate applicable law."[68]

LHF also satisfies the direct-financial-interest prong. "The essential aspect of the direct financial benefit inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits."[69] "Financial benefit exists where the availability of infringing material acts as a 'draw' for customers."[70] "The size of the 'draw' relative to a defendant's overall business is immaterial. A defendant receives a 'direct financial benefit' from a third-party infringement so long as the infringement of third parties acts as a 'draw' for customers 'regardless of *how substantial* the benefit is in proportion to a defendant's overall profits.'"[71] LHF alleges that Boughton benefitted from third-party infringement by viewing "London Has Fallen" without paying for it.[72] The law is clear that it doesn't matter how large the financial benefit is: by watching the BitTorrent-downloaded film, Boughton saved the cost of a movie ticket, and that is a direct financial benefit.

I therefore find that LHF sufficiently pled each of its claims in the first-amended complaint. I also find that LHF's claims have substantive merit, subject to any defenses that Boughton could raise.

     *c.     Sum of money at stake*

---

[68] *Id.* (citing *A&M Records*, 239 F.3d 1004).

[69] *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628031, at *3 (C.D. Cal. Nov. 14, 2014) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

[70] *A&M Records*, 239 F.3d at 1023.

[71] *Perfect 10*, 2014 WL 8628031, at *3 (quoting *Ellison*, 357 F.3d at 1079).

[72] ECF No. 8 at 14, ¶ 68.

17

The sum-of-money factor requires me to consider "the amount of money at stake in relation to the seriousness of [Boughton]'s conduct."[73] "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored."[74] LHF asks for statutory damages and attorney's fees and costs.

For statutory damages, LHF requests $15,000 under 17 U.S.C. § 504(c).[75] The statute sets a $750 minimum and a $30,000 maximum award of damages for copyright infringement,[76] and that maximum can be increased up to $150,000 where the infringement was willful.[77] I have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."[78]

Given Boughton's numerous opportunities to respond to LHF's demand letters, first-amended complaint, and this motion, coupled with LHF's unopposed allegations that I take as true, the factual showing before me indicates that Boughton is a willful copyright infringer. But I do not find that $15,000 is necessary to compensate LHF for its injury and to deter Boughton and other BitTorrent users. Although I acknowledge that other courts—even in LHF's other cases in another district—awarded $15,000 for the same offense, I am not persuaded by their actions. After considering the lost-profits movie ticket sales, the

---

[73] *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (quoting *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)).

[74] *Twentieth Century Fox*, 438 F. Supp. 2d at 1071.

[75] ECF No. 41 at 8.

[76] 17 U.S.C. § 504(c)(1) (2012).

[77] 17 U.S.C. § 504(c)(2) (2012).

[78] *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 738 F.2d 1329, 1335 (9th Cir. 1984)).

18

cost of identifying infringers and pursuing litigation, and the boundaries provided
by § 504(c), I determine that $1,500 is the appropriate damage award. This
amount—187.5 times as much as the average $8.00 per movie ticket suggested by
LHF[79]—adequately accomplishes the goals of § 504(c) to protect copyrighted works
and deter infringement. This amount is also not excessive because it is only 1% of
the statutory maximum for willful infringement.

The Copyright Act also allows courts to award the recovery of full costs and
reasonable attorney's fees to the prevailing party as part of those costs.[80] LHF, in
applying the lodestar method,[81] moves for $6,750 in attorney's fees[82] and $800 in
costs, for a total of $7,550. The total sum of money at stake, then, is $9,050, and I
find that this factor weighs in favor of default judgment.

> d.    *Possibility of a dispute concerning material facts*

Next I consider the possibility that material facts are disputed. LHF
adequately alleged three copyright-infringement claims against Boughton.
Boughton failed to appear or otherwise respond, so he admitted as true all of the
material facts alleged in LHF's complaint. Because those facts are presumed true
and Boughton failed to oppose this motion, no factual disputes exist that would
preclude the entry of default judgment against him.

> e.    *Excusable neglect*

Under this factor, I consider whether Boughton's default may have resulted
from excusable neglect. LHF sent Boughton two demand letters roughly six and

---

[79] *See* case 2:16-cv-02028-JAD-NJK, ECF No. 66 at 9 n.3 and accompanying text
(LHF's objection to report and recommendation, incorporated by reference in this
case at ECF No. 51).

[80] 17 U.S.C. § 505 (2012).

[81] *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

[82] This number is based on a rate of $375.00 per hour for 18 hours.

three weeks prior to filing its first-amended complaint. Boughton did not respond to either of them. Then LHF filed its first-amended complaint on November 10, 2016, and sent Boughton a third demand letter. He did not respond to that letter either. LHF served Boughton with process on February 6, 2017, and Boughton failed to appear or file an answer to the first amended complaint. Five and a half months later, LHF moved for default judgment, and Boughton, once again, did not respond. Boughton demonstrated has a habit of ignoring LHF, so I can only conclude that his default was not the product of excusable neglect. This factor thus weighs in favor of entering default judgment.

### f. *Favoring decisions on the merits*

"Generally, default judgments are disfavored because cases should be decided upon their merits whenever reasonably possible."[83] Because Boughton has failed to respond to anything at all in this action, it is not possible to decide this case on its merits, so this factor, too, weighs in favor of default judgment. As every factor weighs in favor of entering default judgment, I grant LHF's motion as it pertains to Boughton.

### 4. *Permanent injunction*

As its final claim for relief, LHF asks for a permanent injunction enjoining Boughton from "directly or indirectly infringing [its] rights" over its film "including[,] without limitation[,] using the Internet to reproduce, to distribute, to copy, or to publish the motion picture."[84] The Copyright Act allows me to "grant temporary and final injunctions on such terms as [I] may deem reasonable to prevent or restrain infringement of a copyright."[85] The Supreme Court held in *eBay*

---

[83] *Twentieth Century Fox*, 438 F. Supp. 2d at 1072 (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).

[84] ECF No. 55 at 14.

[85] 17 U.S.C. § 502(a) (2012).

20

*Inc. v. MercExchange, L.L.C.* that a plaintiff must satisfy a four-factor test to receive a permanent injunction in a patent-infringement case.[86] LHF must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[87] This test also applies to copyright-infringement cases.[88]

LHF argues that "[m]onetary damages alone are simply inadequate" because "absent injunctive relief to force the deletion of each torrent file from the Defendants' computers . . . infringement will continue unabated in exponential fashion."[89] Because Boughton is the only remaining defendant after my severance and dismissal of Gallego, Gyarfas, Templeton, and Walsh, I only consider whether monetary damages are sufficient to deter Boughton's infringing activity. I conclude that a monetary judgment of $9,050 is sufficient to compensate LHF for any infringement injury and likely to sufficiently deter Boughton from infringing LHF's copyright, so LHF fails to satisfy the second factor of the permanent-injunction test, and I deny its request for injunctive relief.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that LHF's objection to Magistrate Judge Koppe's report and recommendation is **OVERRULED** and Magistrate Judge Koppe's report and recommendation [ECF No. 47] is **ACCEPTED and ADOPTED**

---

[86] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[87] *Id.*

[88] *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995–96 (9th Cir. 2011).

[89] ECF No. 55 at 13.

in part and REJECTED in part. I adopt Judge Koppe's conclusion that swarm joinder is discretionarily improper and her ultimate recommendation to sever and dismiss all claims except those against Boughton.

IT IS FURTHER ORDERED that all claims against defendants Gallego, Gyarfas, Templeton, and Walsh are **SEVERED and DISMISSED** from this case without prejudice to LHF's ability to bring these claims in new, separate actions.

IT IS FURTHER ORDERED that LHF's motion for default judgment [ECF No. 55] is **DENIED as moot** with respect to Gallego, Gyarfas, Templeton, and Walsh and **GRANTED** with respect to Boughton. I award LHF $1,500 in statutory damages and $7,550 in reasonable attorney's fees and costs for a total of $9,050. I decline to issue a permanent injunction against Boughton.

The Clerk of Court is directed to **ENTER JUDGMENT** in favor of LHF Productions, Inc. and against Derrick Boughton in the total amount of $9,050 and **CLOSE THIS CASE.**

DATED: October 23, 2017.

Jennifer A. Dorsey
United States District Judge